**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**NINA R. MOSBY-CLARK,**

        **Plaintiff,**                      Civil Action No. 17-cv-11751

        v.                                  District Judge Linda V. Parker

**COMMISSIONER OF**                 Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Nina R. Mosby-Clark seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that she is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 14). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.**      **RECOMMENDATION**

      For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**, and that the case be dismissed in its entirety.

## II. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") as well as Supplemental Security Income ("SSI"), alleging that she has been disabled since March 6, 2013. (TR 152-56.) The Social Security Administration initially denied Plaintiff's claims on August 27, 2014. (TR 81-104.) On January 19, 2016, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge (ALJ) Jerome B. Blum. (TR 37-80.) On March 2, 2016, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 20-30.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on April 27, 2017. (TR 1-3.) On June 2, 2017, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 12; docket no. 14.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of her medical issues. (Docket no. 12, pp. 7-10.) In addition, the ALJ summarized Plaintiff's medical record (TR 25-29), and Defendant provided its own summary. (Docket no. 14, pp. 4-8.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018 and did not engage in substantial gainful activity since

March 6, 2013, the alleged onset date. (TR 25.) The ALJ found that Plaintiff had one severe impairment: degenerative joint disease. (*Id.*) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR 27.) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b). (*Id.*) On the basis of this assessment, the ALJ found that Plaintiff is "capable of performing past relevant work as an inspector, cashier, cleaner, and machine feeder," which the Vocational Expert ("VE") classified as unskilled with light exertional demands. (TR 29.) Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time between the alleged onset date and the date of the decision. (TR 30.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past

4

work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

Plaintiff contends that the evidence of record does not support the ALJ's finding that she can perform light work. (Docket no. 12, pp. 10-17.) In particular, Plaintiff asserts that the RFC should have included limitations on her ability to walk and/or stand due to degenerative joint disease in her knees, as well as limitations on her ability to manipulate with her hands because of carpal tunnel syndrome. (*Id.*)

As described above, the ALJ determined that Plaintiff had the RFC to perform unskilled light work as defined by 20 C.F.R. § 416.967. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967. A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id*. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. *Id.*

Plaintiff contends that the RFC should have included limitations on her ability to walk and stand because of degenerative joint disease in her knees. In particular, Plaintiff asserts that "[her] need to wear a right knee brace, to intermittently use a cane and her need to undergo right knee replacement surgery one month after the hearing provide support that she was not able to perform the standing and walking requirements of light work activity, i.e. standing and/or walking 6 of 8 hours per day." (Docket no. 12, p. 13.) In support, Plaintiff points to the records of Michael W. Roberts, D.O. and A.K. Shah, M.D. regarding treatment of degenerative joint disease in both knees, as well as her testimony that she could only stand for 20-25 minutes at one time. (*Id.* at 13-17.)

Dr. Roberts treated Plaintiff on several occasions beginning in April of 2013. On April 29, 2013, Dr. Roberts diagnosed Plaintiff with a meniscus tear in her right knee. (TR 286.) Plaintiff reported that the pain in her knee was ten out of ten on that date. (*Id.*) Nevertheless, Dr. Roberts observed that Plaintiff's "stability and palpation [were] within normal limits." (*Id.*) On March 11, 2014, Plaintiff had surgery to repair the meniscus tear. (TR 267.) During a follow-up visit on March 21, 2014, Dr. Roberts observed that Plaintiff's "[r]ight knee pain is resolved, zero out of ten." (TR 284.) At a physical therapy treatment on April 8, 2014, Plaintiff reported that pain in her right knee was three out of ten, and based on Plaintiff's answers to a "functional assessment questionnaire," she demonstrated a "24% decrease in function." (TR 279.) In January of 2015, Plaintiff reported that pain in her right knee was nine out of ten, and Dr. Roberts recommended that she "reduce activity." (TR 320-21.) As of March of 2015, Plaintiff continued to report pain in her right knee, but Dr. Roberts observed that stability was within normal limits and that strength was greater than four out of five. (TR 317.)

Plaintiff treated with Dr. Shah in March and May of 2015. On March 3, 2015, Dr. Shah observed that Plaintiff demonstrated antalgic gait, with "more weightbearing on the left side," and that she wore knee braces on both her knees. (TR 327.) Dr. Shah also noted that Plaintiff "was able to walk on her toes and heels," that she "was able to tandem walk reasonably," and that strength in her bilateral upper and lower extremities was five out of five. (*Id.*) On May 12, 2015, Dr. Shah similarly observed that while Plaintiff walked with a "mildly antalgic gait," strength in her lower extremities was five out of five. (TR 323.) In addition, Dr. Shah noted that "[a]lthough [Plaintiff] has a cane, she does not ambulate with one." (*Id.*)

The ALJ acknowledged the records of Dr. Roberts and Dr. Shah, but placed greater emphasis on "a significant gap in treatment [from April 2013] until December 2013" as well as the fact that Plaintiff was discharged from a clinic for violation of its "narcotics contract," which in the ALJ's view "call[ed] her general credibility into question." (TR 29.)

Plaintiff contends that the RFC should also include "manipulative limitations" based on Plaintiff's carpal tunnel diagnosis. (Docket no. 12, p. 11.) Dr. Shah's records from March and May of 2015 reflect that Plaintiff experienced "[s]ensory symptoms in bilateral upper extremity with features suggestive of carpal tunnel syndrome." (TR 323.) Dr. Shah diagnosed Plaintiff with "mild-to-moderate sensory carpal tunnel syndrome" and prescribed braces for both wrists. (*Id.*)

The ALJ acknowledged Dr. Shah's findings, but ultimately imposed no manipulative limitations because the records showed only "minimal indication of treatment" for Plaintiff's "mild to moderate" carpal tunnel. (TR 29.)

Based on the records described above, substantial evidence supports the ALJ's RFC assessment. None of Plaintiff's physicians recommends functional limitations greater than the "light work" designation adopted by the ALJ. Furthermore, the ALJ found that Plaintiff was less

7

than fully credible regarding the limiting effects of her impairments, and Plaintiff does not challenge that determination. Finally, the ALJ did not err by declining to impose functional limitations based on the fact that Plaintiff had knee replacement surgery in April of 2016, which Plaintiff urges the Court to consider. (Docket no. 12, p. 15.) The fact of this surgery was not before the ALJ at the time of his decision, and does not by itself support additional functional limitations.

## VI.     CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**, and that the case be dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 2, 2018  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: April 2, 2018  s/ Leanne Hosking
Case Manager

9